## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

GEORGE SMITH                                   CASE NO.  3:22-CV-01319

VERSUS                                          JUDGE TERRY A. DOUGHTY

TOWN OF LAKE PROVIDENCE ET AL.      MAG. JUDGE KAYLA D. MCCLUSKY

### <u>REPORT & RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. #6] filed by Defendants Taquez Tibbs, Leroy Threats, and Town of Lake Providence.  The motion is opposed.  [doc. #11]. For reasons detailed below, it is recommended that the motion to dismiss be GRANTED IN PART and DENIED IN PART.

### <u>Background</u>

On April 25, 2022, Plaintiff George Smith ("Smith") filed the instant civil rights action in the Sixth Judicial District Court, East Carroll Parish, State of Louisiana.  [doc #1-2, p. 1].  Therein, Smith asserts claims against Defendants under 42 U.S.C. § 1983 and Louisiana state law to recover damages for injuries that he sustained when Defendant Taquez Tibbs ("Officer Tibbs"), a police officer for the Lake Providence Police Department ("LPPD"), allegedly exercised excessive force against him.  *Id.* at 1-2.  Smith sues Officer Tibbs in his individual and official capacities; Leroy Threats ("Chief Threats") in his individual and official capacity as Chief of Police for LPPD; and Town of Lake Providence ("Lake Providence") in its official capacity.  *Id.* at 1.

Specifically, Smith alleges that on July 28, 2021, he approached Officer Tibbs[1] and asked for his assistance in having several persons move their vehicles from Smith's property. *Id.* at 3. Officer Tibbs told Smith that he would not help him because the matter was civil. *Id.* A short period later, when Officer Tibbs ordered Smith to get into a vehicle that he had no relation to, Smith told Officer Tibbs that the vehicle was not his car. *Id.* Officer Tibbs responded by ordering him to get into the car, or he would place Smith in his patrol car. *Id.* Shortly thereafter, Smith alleges that Officer Tibbs "forcefully threw [Smith] to the ground for no apparent reason and put his knee in [Smith's] back." *Id.* Smith alleges that he was not resisting, that Officer Tibbs used overwhelming force and power to subdue him, that the risks or dangers perceived by Officer Tibbs were minimal at best, and that there was no emergency. *Id.* at 4. According to Smith, Officer Tibbs' actions were "unnecessary and unwarranted." *Id.*

Smith alleges that he suffered "severe bodily injuries" resulting from Officer Tibbs' use of excessive force, including aggravation of pre-existing injuries from an intestinal transplant and large ventral hernia, and pain and suffering. *Id.* at 3.

Smith also alleges that Chief Threats is liable for failure to train his police officers in the proper use of force and for failure to establish policies on the proper use of force. *Id.* at 4. Smith alleges that Chief Threats' failure to implement adequate policy and training resulted in Officer Tibbs' use of excessive force. *Id.*

Finally, Smith alleges that Lake Providence had a non-delegable duty to supervise, train, and maintain adequate policies, so that citizens are not subjected to the use of excessive force. *Id.*

---

[1] Smith alleges that at the time of the incident Officer Tibbs was in full uniform bearing the name of Lake Providence, was driving a LPPD cruiser, and held himself as being on duty for the LPPD.

Smith alleges that Lake Providence's failure to implement adequate policy and training resulted in Officer Tibbs' use of excessive force. *Id.*

Smith brings this action under § 1983 for violation of his Fourth Amendment right to be free of the use of excessive force. *Id.* at 3. He also alleges violations of Louisiana Civil Code Article 2315 and Article One Section 5 of the Louisiana Constitution of 1974. *Id.* Finally, he alleges violations of Louisiana Code Articles 2323 and 2324. *Id.*

As to relief, Smith argues that he is "entitled to an award of punitive damages." *Id.* at 5. He further "prays for judgment against Defendant for damages in an amount as is reasonable in the premises, legal interest from date of judicial demand, and all costs." *Id.*

On May 17, 2022, Defendants removed this case to federal court based on federal question jurisdiction. [doc. #1].

On June 14, 2022, Defendants filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. [doc. #6]. Therein, Defendants claim that Smith has failed to plausibly allege a state law or constitutional violation or overcome qualified immunity. *Id.*

On July 1, 2022, Smith filed his opposition. [doc. #11]. On July 8, 2022, Defendants filed their reply. [doc. #12]. Accordingly, this matter is ripe.

### Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief, inter alia, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. FED. R. CIV. P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not equate to possibility or probability—it lies somewhere in between. *See Iqbal*, *supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

"The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U.S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Twombly*, 127 S. Ct. at 1958).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, supra. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, supra. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"—including public records. *Dorsey*, supra; *Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir. 2007) (proper to take judicial notice of matters of public record).

## <u>Analysis</u>

I.   *Section 1983 Claims*

    a. *Individual Capacity Claims*

In their motion to dismiss, Defendants raise qualified immunity. The doctrine of qualified immunity "adds a wrinkle" to § 1983 pleadings. *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020). "'A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'" *Id.* (quoting

*Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).  Thus, a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*.  *Id.*

Notably, "qualified immunity is an immunity from suit, not merely a defense to liability." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021).  Protection from pretrial discovery—and the significant time and costs associated therewith—is "among the chief benefits" of qualified immunity.  *Lopez v. Ramirez*, No. 21-40235, 2022 WL 3230442, at *2 (5th Cir. 2022) (per curiam).  Thus, "a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation."  *Id.*

When, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).  The qualified immunity doctrine balances two often conflicting interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*  As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Id.* (citations and internal quotation marks omitted).

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Mendenhall v. Riser*, 213

F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986)).

Qualified immunity is nominally characterized as an affirmative defense. However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the official's conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Plaintiff's burden is two-pronged. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). First, a plaintiff must demonstrate that defendant(s) violated a constitutional right under current law. *Id.* "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). Moreover, when multiple Defendants are sued in their individual capacity, each Defendant's conduct must be analyzed separately. *Pratt v. Harris County, Tex.*, 822 F.3d 174, 181 (5th Cir. 2016).

### i. Officer Tibbs

Smith argues that Officer Tibbs violated his Fourth Amendment right to be free of the use of excessive force. [doc. #1, p. 2-4]. In this context, the Fourth Amendment is violated when an individual "suffers an injury that results directly and only from the officer's clearly excessive and objectively unreasonable use of force." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020)).

"To overcome the claim of qualified immunity on their claim of excessive force, [p]laintiffs must show '(1) an injury, (2) which resulted directly and only from a use of force that was clearly

excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Wilson v. City of Bastrop Through Cotton*, 526 F. Supp. 3d 170, 180 (W.D. La. March 17, 2021) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)).

"The reasonableness inquiry in an excessive force case is an objective one: the question is whether the [officer's] actions are 'objectively unreasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quoting *Scott v. United States*, 436 U.S. 128, 137-39 (1978)). The Court evaluates the use of force from the vantage point of a reasonable officer at the scene rather than 20/20 hindsight. *Wilson*, 526 F. Supp. 3d at 180.

Factors guiding the analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Court also considers "the relationship between the need for force and the amount of force used." *Id.* (quoting *Joseph*, 981 F.3d at 332).

In their motion to dismiss, Defendants argue that Smith has not adequately alleged that Officer Tibbs used unlawful force. [doc. #6-1, p. 3]. Defendants argue that an allegation that Smith was "shoved" or "thrown" is inadequate to plausibly allege unlawful excessive force. *Id.*

In his opposition, Smith argues that he has plausibly alleged that Officer Tibbs used unlawful excessive force. [doc. #11-1, p. 5-6]. Smith argues that there is no indication that he committed a crime or posed a threat to Officer Tibbs, nor that he resisted or attempted to flee. *Id.* Further, Smith argues that the injuries he sustained are significant. *Id.*

The Fifth Circuit has repeatedly held that an officer uses objectively unreasonable force when he throws a compliant suspect on the ground and knees him in the back. *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018) (officer who kneed a compliant suspect in the hip and pushed

him against a patrol car used objectively unreasonable force); *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (officer used objectively unreasonable force when he pushed, kneed, and threw a suspect who posed no threat to the officer's safety); *see also Darden v. City of Fort Worth*, 880 F.3d 722, 732 (5th Cir. 2018) (throwing and tasing a suspect who was not resisting arrest was objectively unreasonable); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (forcefully slamming a suspect's face into a car was objectively unreasonable when plaintiff was not resisting arrest or attempting to flee).

Here, Officer Tibbs' use of force, as alleged, was objectively unreasonable. After Officer Tibbs declined Smith's request for his help in removing trespassory vehicles from his property, Smith alleges that Officer Tibbs ordered him into a car that he had no relation to. [doc. #1-2, p. 3]. When Smith told Officer Tibbs that the car was not his, Officer Tibbs told him to either get into the car, or Officer Tibbs would place him in his police cruiser. *Id.* Shortly thereafter, Officer Tibbs forcefully threw Smith to the ground "for no apparent reason" and put his knee in Smith's back. *Id.* Considering the *Graham* factors, there is no indication that Smith was a suspect in a crime, that he posed any threat to Officer Tibbs' safety, or that he was resisting arrest or attempting to flee. Rather, Smith's pleads that Officer Tibbs acted entirely without provocation.[2] Thus, Smith plausibly alleges that Officer Tibbs' use of force was excessive and unreasonable.

Smith also plausibly alleges that he suffered an injury resulting from Officer Tibbs' unreasonable use of force. "Although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. *Any* force found to be objectively

---

[2] At the 12(b)(6) stage of litigation, the Court must accept factual pleadings as true. *Ashcroft v. Iqbal*, 556 U.S. 669, 129 S.Ct. 1937, 1949 (2009).

unreasonable necessarily exceeds the *de minimis* threshold . . .  as long as a plaintiff has suffered some injury, even relatively insignificant injuries . . . will prove cognizable when resulting from an officer's unreasonably excessive force."  *Alexander*, 854 F.3d at 310.

Accepting the facts in Smith's complaint as true, he suffered "severe bodily injuries" resulting exclusively from Officer Tibbs' unreasonable use of force, including aggravation of pre-existing injuries and "severe pain and suffering."  [doc. #1-2, p. 3]; *C.f. Sam*, 887 F.3d at 710 (minor bleeding satisfied the "some injury" test) (citing *Bone v. Dunaway*, 757 Fed. App'x 258, 262 (5th Cir. 2016) ("Although Bone's allegation of injury could be characterized as de minimis—bruising and a swollen cheek—whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury.")); *Schmidt v. Gray*, 399 Fed. App'x 925, 928 (5th Cir. 2010) (pain, soreness, and bruising resulting from an officer's slamming a car's trunk lid on a suspect's finger was a legally cognizable injury); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) ("dizziness, loss of breath, and coughing" caused by choking was a sufficient injury to establish a constitutional violation)).  Given that Officer Tibbs used excessive force, Smith's injuries—aggravation of prior intestinal and hernia issues—satisfy the *de minimis* threshold.

Considering the foregoing, Smith plausibly alleges that he suffered an injury which resulted directly and only from Officer Tibbs' excessive use of force which was clearly unreasonable.

 Furthermore, it was clearly established at the time of the incident that pushing, kneeing, and throwing a suspect who is "neither fleeing nor resisting" is excessive.  *Sam*, 887 F.3d at 714; *Bush*, 513 F.3d at 503.  Accepting Smith's factual allegations as true, Officer Tibbs' actions were objectively unreasonable in light of law clearly established at the time of the incident.

Accordingly, Smith pleads facts sufficient to overcome qualified immunity at the 12(b)(6) stage of litigation and, therefore, plausibly states a claim against Officer Tibbs in his personal capacity.

### ii. Chief Threats

Smith brings a supervisory liability claim against Chief Threats "in his capacities."[3] [doc. #1-2, p. 1]. To survive a 12(b)(6) motion to dismiss against a § 1983 supervisory liability claim, the plaintiff must plausibly allege that "(1) the supervisor affirmatively participates in the acts that cause the constitutional deprivation, or (2) the supervisor implements unconstitutional policies that causally result in the constitutional injury." *Tilman v. Clarke County*, 514 F. Supp. 3d 884, 893 (S.D. Miss. Jan. 21, 2021) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018)).

Smith also propounds a failure-to-train theory of § 1983 supervisory liability against Chief Threats.[4] A failure-to-train theory requires a plaintiff to show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis ex rel. McCully*, 406 F.3d at 381 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir.1998)).

---

[3] The Court interprets this to mean that Smith brings claims against Chief Threats in his individual and official capacities.

[4] Courts analyze failure-to-train claims in the individual-capacity supervisory liability context and in the official-capacity municipal liability context. *Compare Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (individual-capacity supervisory liability context); *with Peña*, 879 F.3d at 623-24 (official-capacity municipal liability context). Here, Smith brings failure-to-train claims against Chief Threats in his individual and official capacities, and against Lake Providence in its official capacity. The Court addresses here the individual-capacity supervisory liability claim. *See infra* for discussion of the official-capacity municipal liability claims.

As to the third prong, "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*  Officials' actions that are merely "inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . ."  *Id.*  (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

"To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and the inadequacy of the training is obvious and likely to result in a constitutional violation."  *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)).  In some cases, however, "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, a supervisor might reasonably be found to be deliberately indifferent."  *Id.* (quoting *City of Canton, Ohio, v. Harris*, 489 U.S. 378, 390 (1989)).

Looking to Smith's complaint, his § 1983 allegations towards Chief Threats are thin.  Smith alleges that "[Chief Threats] is liable for failure to train his police officers in proper use of force and failure to establish policies on the proper use of force.  The failure to implement adequate policy and training in the proper use of force resulted in Officer Tibbs using excessive force on [Smith], who was not resisting."  [doc. #1-2, p. 4].  Smith does not allege that Chief Threats was personally involved in Officer Tibbs' conduct, nor does he identify a specific policy that caused his injuries.  Instead, he restates in conclusory fashion the elements for supervisory liability.  *See Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Howard v. City of Houston*, No. H-21-1179, 2022 WL 479940 at *9-10 (S.D. Tex. Feb. 16, 2022) (Plaintiff stated a plausible claim for

supervisory liability when alleging that the defendant perpetuated a pattern of secreting away instances of excessive force by keeping six police shootings from public view and preventing investigations into over two-hundred fifty incidents of use of firearms.).  Thus, Smith does not make sufficient factual allegations to plausibly state a supervisory liability claim.

As to the failure-to-train claim itself, Smith's allegations are similarly conclusory.  Smith alleges that Chief Threats failed to train Officer Tibbs which resulted in Officer Tibbs' use of excessive force. Even assuming that these allegations are sufficient to satisfy the first and second prongs of the failure-to-train analysis, Smith does plead any facts as to deliberate indifference. Smith does not allege a pattern by Chief Threats of violating constitutional rights nor a deliberate or conscious choice to endanger his constitutional rights.

And while a single incident may demonstrate deliberate indifference when the specific injury suffered is a highly predictable consequence of a failure to train and was the moving force behind the constitutional violation, Smith does not allege facts to plausibly claim single-incident deliberate indifference.  *Estate of Davis ex rel. McCully*, 406 F.3d at 385-86.  By comparison, in *Brown v. Bryan County*, the Fifth Circuit held that the "fail[ure] to provide *any* training or supervision for a young, inexperienced officer with a record of recklessness" was sufficient to establish single-incident deliberate indifference. *Estate of Davis ex rel. McCully*, 406 F.3d at 385-86 (citing *Brown v. Bryan County, Okla.*, 219 F.3d 450, 460-62 (5th Cir. 2000)).  Here, however, Smith does not make any similar factual allegations—instead, he makes the conclusory statement that Chief Threats is liable for "failure to train his police officers in proper use of force and failure to establish policies on the proper use of force."  [doc. #1-2, p. 4].

Furthermore, even assuming that Chief Threats failed to provide Officer Tibbs with any training, single-incident deliberate indifference also requires a plaintiff to show "that the highly

predictable consequence of a failure to train would result in the specific injury suffered." *Henderson v. Harris County*, No. 21-20544 (5th Cir. Oct. 12, 2022) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010)). "For a violation to be highly predictable, the municipality must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Id.* A reasonable officer, even without training, understands that it is unlawful to throw a non-suspect citizen to the ground and knee him in the back absent provocation. Thus, on the facts that Smith alleges, any failure to train was not the "moving force" behind Officer Tibbs' excessive use of force.

Accordingly, having viewed Smith's complaint in the light most favorable to him, the undersigned concludes that Smith failed to plausibly state a § 1983 claim against Chief Threats in his individual capacity.

In their motion to dismiss, Defendants maintain that Chief Threats is entitled to qualified immunity. Because the undersigned concludes that Smith has not plausibly alleged a § 1983 claim against Chief Threats in his individual capacity, the Court need not reach the qualified immunity argument.

### b. *Official Capacity Claims*

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (citation omitted). As an initial matter, "in any case which a defendant government official is sued in his individual and official capacity, and the city [] is also sued, there potentially exists an overlapping cause of action. The official-capacity claims and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). Here, Smith has sued Officer Tibbs and Chief Treats in their

individual and official capacities, and Town of Lake Providence in its official capacity. Because Smith has overlapping claims, his official-capacity claims against Officer Tibbs and Chief Threats merge with his claims against Town of Lake Providence. Accordingly, the Court will consider Smith's policy claim and failure-to-train claim against Lake Providence.

*i.    Policy*

To establish municipal liability under § 1983, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson*, 588 F.3d 838 at 847 (internal quotations omitted). Further, municipalities are not liable under § 1983 on the theory of *respondeat superior*. *Id.*; *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985).

The official policy requirement may be met in various ways, including written policy statements, regulations, ordinances, or a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009). The existence of a custom or policy may be shown by demonstrating (1) a pattern of unconstitutional conduct by municipal actors or employees; or (2) a single unconstitutional act by a final policymaker. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

"In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*,

863 F.2d 1180, 1184 (5th Cir. 1989). "To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña*, 879 F.3d at 622. Therefore, to plausibly plead a widespread practice as required to support municipal liability, a plaintiff must describe more than the lone incident that gave rise to his own injury. *Id*. (citation omitted).

In his opposition, Smith argues that his allegations are sufficient to survive a motion to dismiss the official liability claims. [doc. #11-1, p. 6-7]. Upon review, however, Smith's allegations against Lake Providence are conclusory and detail no specific policy, custom, nor any history of similar incidents. Smith does not allege that anyone besides himself suffered excessive force as required to show that Lake Providence had an unconstitutional policy or practice. *See Peña*, 879 F.3d at 622 (". . . the only 'specific fact' in the complaint is the single incident in which [plaintiff] was involved. But plausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' [internal citation omitted] a plaintiff must do more than describe the incident that gave rise to his injury."); *Spiller v. City of Texas City Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (claim by motorist that his arrest resulted from the police department's general policy of disregarding the rights of African American citizens was "vague and conclusory").

Furthermore, Smith's complaint fails to allege that any official policy was promulgated or announced, nor that Town of Lake Providence had an unwritten custom attributable to a city policymaker. *Peña*, 879 F.3d at 622 ("A city cannot be liable for an unwritten custom unless actual or constructive knowledge of such custom is attributable to a city policymaker."). Mere speculation absent specific factual allegations is insufficient. Accordingly, Smith fails to plausibly state a policy liability claim.

16

ii.    *Failure-to-Train*

Smith also alleges that Lake Providence failed to train its officers, which represents another type of *Monell* claim. *Hutcheson v. Dallas County, Texas*, 994 F.3d 477, 482 (5th Cir. 2021); *see Valle*, 613 F.3d at 544 ("The standard applicable to a failure-to-train claim is the same as the standard for municipal liability."). The "failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Id.* (citation omitted).

Here, Smith does not allege facts to show that Lake Providence acted with deliberate indifference. As discussed *supra*, Smith does not allege that Lake Providence has a pattern of violating constitutional rights nor does he plausibly allege single-incident deliberate indifference. Smith's allegations against Lake Providence are conclusory—that "the failure to implement adequate policy and training resulted in Officer Tibbs use of excessive force and uses [sic] a cause of the violation of Plaintiff's rights as described above."[5] Thus, Smith's complaint lacks the "factual content" necessary to show that Lake Providence's alleged deliberate indifference is not merely conceivable, but plausible. *See Flanagan v. Cty. of Dallas, Tex.*, 48 F. Supp. 941, 950 (N.D. Tex. Sept. 23, 2014) (quoting *Iqbal*, 556 U.S. at 678) ("A sufficient complaint must provide adequate 'factual content' to make deliberate indifference by the City's official policymakers not merely conceivable, but plausible in the context of the facts alleged.").

---

[5] While neither party raises the final-policymaker exception to the failure-to-train claim, "it is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005); see also *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480; 106 S.Ct. 1292, 1298 (1986). Further, "[a]lthough a policymaker's single decision may be in effect a policy that creates liability for a municipality, the situations to which this exception applies are few and will create municipal liability only if the municipal actor is a final policymaker." *Louisiana Div. Sons of Confederate Veterans v. City of Natchitoches*, 821 Fed. App'x. 317, 320 (5th Cir. 2020) (citation omitted).

Finally, when official-capacity claims against government officials have merged with the claims against the governmental entity and the claims against the city fail for a pleading defect, the remaining immunity discussion by the courts necessarily concerns only the personal liability of individuals sued in their individual capacities. *Turner*, 229 F.3d at 485. Accordingly, because Smith's §1983 official-capacity claims against Chief Threats and Officer Tibbs merged with the claims against Lake Providence, and the undersigned concludes that the claims against Lake Providence should be dismissed, the § 1983 claims against Chief Threats and Officer Tibbs in their official capacities should also be dismissed.

II.    *State Law Claims*

Smith alleges state law claims of battery, excessive use of force, and negligence against Officer Tibbs, Chief Threats, and Lake Providence. [docs. #1-2, p. 4; #11-1, p. 8]. In their motion to dismiss, Defendants make a cursory argument that Smith's state law claims should be evaluated in light of Louisiana's qualified immunity standard, which they argue is identical to the federal standard. [doc. #6-1, p. 6-7].

"To prevail on a motion to dismiss an ordinary claim under Fed. R. Civ. P. 12(b)(6), the defendant must show that the plaintiff is unable to satisfy the applicable standard for stating a claim under Fed. R. Civ. P. 8(a)." *West v. Consol. Gov't of Lafayette*, No. 6:21-4431, 2022 WL 2033335, at *9 (W.D. La. May 13, 2022) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). "Courts may find conclusory statements insufficient to support dismissal under Rule 12(b)(6), especially when the movant disregards relevant portions of the operative pleading." *Id.*

In their motion to dismiss, Defendants do not address Smith's state law claims, the elements of the claims, or the particulars of how the claims are insufficiently pled. *See West*, 2022

WL 2033335, at *10 (movant's two-paragraph argument failed to satisfy the burden under Rule 12(b)(6)).  Accordingly, the undersigned concludes that Defendants have failed to show that they are entitled to dismissal of Smith's state law claims.

### III.    Amendment of the Complaint

In his opposition to the instant motion, Smith argues that should the Court determine that he has not adequately pled his claims, he should be allowed to amend his complaint.  [doc. #11-1, p. 9-10].  Smith notes that he has not previously amended his complaint and granting leave to do so will not unduly delay the proceedings because the matter is not yet set for trial.  *Id.*

In reply, Defendants argue that Smith seeks to have the Court essentially provide an advisory opinion on whether his allegations are adequate.  [doc. #12, p. 1-2].  Defendants argue that Plaintiff's request to amend in opposition to the instant motion is insufficient under Rule 15(a) as a request for leave to amend.  *Id.*  Defendants argue that because Plaintiff did not seek leave to amend, the Court should not address his complaint hypothetically and should dismiss his claims without further amendments.  *Id.*

Nonetheless, the court is obliged to "freely" grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Furthermore, "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . . " *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  Here, it is conceivable that Smith can cure one or more aspects of his deficient pleading via amendment.  Accordingly, the instant recommendation of dismissal is subject to Smith's opportunity to seek leave of court to amend his complaint *with a proposed pleading* that cures the deficient allegations—within the deadline to file objections to this report and recommendation.

## CONCLUSION

In the interim, and in the absence of a curative amendment, IT IS RECOMMENDED that the motion for dismissal for failure to state a claim upon which relief can be granted [doc. #6], filed by Defendants, Taquez Tibbs, Leroy Threats, and Lake Providence, be GRANTED IN PART and that Plaintiff's § 1983 claims against Officer Tibbs in his official capacity, Chief Threats in his individual and official capacities, and the Town of Lake Providence be DISMISSED WITH PREJUDICE.    IT IS RECOMMENDED that the motion for dismissal [doc. #6] otherwise be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 17th day of October, 2022.

_____

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE